Johnson v Johnson (2019 NY Slip Op 03855)





Johnson v Johnson


2019 NY Slip Op 03855


Decided on May 16, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 16, 2019

525595

[*1]KRISTI L. JOHNSON, Respondent,
v
BRET A. JOHNSON, Appellant.

Calendar Date: March 19, 2019

Before: Lynch, J.P., Clark, Mulvey, Aarons and Rumsey, JJ.


Bret A. Johnson, Syracuse, appellant pro se.
Barclay Damon LLP, Syracuse (J. Eric Charlton of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from a judgment of the Supreme Court (Cerio Jr., J.), entered August 16, 2017 in Madison County, ordering, among other things, equitable distribution of the parties' marital property and child support, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 2003 and have one child (born in 2002). The wife commenced this action for divorce in December 2015 and, one month later, sought certain temporary relief, including an order directing the husband to pay the household expenses, "temporary support" in the amount of $500 per month and the fee to complete a professional appraisal of the marital business. In April 2016, the parties stipulated to the entry of a temporary order directing the husband to pay $2,200 in "temporary support" and the appraisal fee. Thereafter, the husband moved to modify the April 2016 temporary order, arguing that he was entitled to reimbursement of support payments because the wife had begun working. Supreme Court denied the husband's motion but ordered, pursuant to the parties' stipulation, that his support obligation be limited to child support payable in the amount of $550 per month. Prior to trial, the parties agreed to the grounds for divorce and that the wife would have sole legal and physical custody of the child, with parenting time to the husband.
After the trial, Supreme Court, as relevant here, ordered the husband to pay child support in the amount of $723.33 per month effective May 1, 2017 and reimbursed the husband for overpaid support. In addition, the court awarded the wife $17,031, representing capital contributions from marital assets to two marital businesses. A judgment was thereafter entered and the husband appeals, arguing that the court erred by imputing income for purposes of maintenance and child support, miscalculated the support overpayment credited to him, and erred in awarding the wife one half of the marital contributions to the marital businesses.
The Child Support Standards Act (see Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) "provides a precisely articulated, three-step method for determining child support. The first step requires the computation of combined parental income. . . . The court next multiplies [*2]the combined parental income figure . . . by a designated percentage based on the number of children to be supported, and then allocates that amount between the parents, applying each parent's respective portion of the total income to reach the amount of each parent's support obligation" (Holterman v Holterman, 3 NY3d 1, 10-11 [2004] [internal quotation marks and citation omitted]; see Domestic Relations Law § 240 [1-b] [b] [3]; [c] [2])[FN1]. A party's income for the purpose of calculating child support and temporary maintenance is determined after consideration of his or her gross total income as reported in the most recent federal income tax return (see Domestic Relations Law §§ 236 [5-a] [b] [4]; 240 [1-b] [b] [5] [i]; DeSouza v DeSouza, 163 AD3d 1185, 1186 [2018]). The CSSA allows for certain deductions from that income, including income from which FICA taxes is "actually paid" (Domestic Relations Law § 240 [1-b] [b] [5] [vii] [H]).
To calculate the maintenance and child support due, Supreme Court considered the wife's 2016 W-2 statements, which indicated that her 2016 gross income was $31,360, and the husband's 2016 tax return, which indicated that his 2016 reported gross income was $39,093. The court then imputed income to the wife based on her projected 2017 gross annual income in the amount of $57,200. As for the husband, the court imputed income based on certain evidence indicating that he had drawn $60,282 from the marital businesses in 2016. The court then purported to deduct FICA taxes from the wife's and the husband's incomes in the amount of "7.65% and 15.3% respectively" and concluded that the wife's adjusted gross income was $52,824.20 and the husband's adjusted gross income was $51,058.85. The court then calculated the wife's and the husband's pro rata shares of the combined parental income at 50.85% and 49.15%, respectively.
"A parent's child support obligation is determined by his or her ability to provide support, rather than the parent's current financial situation" (Mack v Mack, 169 AD3d 1214, 1217 [2019] [internal quotation marks, brackets and citation omitted]). Income may be imputed based on a party's earning capacity, "as long as the court articulates the basis for imputation and the record evidence supports the calculations" (id.). Contrary to the husband's argument, we discern no abuse of Supreme Court's "broad discretion to impute income when determining the amount of child support and maintenance" (Pfister v Pfister, 146 AD3d 1135, 1136 [2017]; see Macaluso v Macaluso, 145 AD3d 1295, 1296 [2016]). Where, as here, a party pays for personal expenses through a business account, the court has the authority to impute income (see Seale v Seale, 149 AD3d 1164, 1170 [2017]; Pfister v Pfister, 146 AD3d at 1137; Armstrong v Armstrong, 72 AD3d 1409, 1413 [2010]). Further, a court may, as here, impute income where there is clear and undisputed evidence of a party's actual income during the pendency of the proceeding (DeSouza v DeSouza, 163 AD3d at 1187).
Although we agree that Supreme Court's determination to impute income was correct, the resulting child support calculation was not correct. When determining a party's income, the CSSA allows statutory deductions for FICA taxes "actually paid" (Domestic Relations Law § 240 [1-b] [b] [5] [vii] [H]; see Fuchs v Fuchs, 276 AD2d 868, 872 [2000]). The court reduced the husband's 2016 income by 15.3% and determined that his income was $51,058.85 [FN2]. Although the court properly deducted standard FICA taxes from the mother's income (see Kaufman v Kaufman, 102 AD3d 925, 927 [2013]), the 15.3% deduction that was applied to the husband's income was excessive, and the evidence demonstrates that the husband "actually paid" self-employment taxes in the amount of $6,162 in 2016 (see Haas v Haas, 265 AD2d 887, 887 [1999]). Because the record evidence is complete, we will calculate the proper amount of child support rather than remit the matter to Supreme Court. Using the wife's income as $57,200, reduced by FICA taxes (7.65%), and the husband's income as $60,282, reduced by $6,162, the [*3]wife's pro rata share of the combined parental income ($106,944) is 49% and the husband's pro rata share is 51%. The annual child support obligation — 17% of the combined parental income (see Domestic Relations Law § 240 [1-b] [b] [3] [i] — is $18,180 and the husband's presumptively correct child support obligation as the noncustodial parent is $9,272 per year or $773 per month.[FN3]
After determining the parties' respective child support obligations, Supreme Court proceeded to undertake a comprehensive and detailed analysis of what the husband's temporary maintenance and support obligations would have been if the wife's actual salary had been considered during the pendency of the action and determined that the husband had overpaid "support" in the amount of $3,285.52. The husband contends that he is entitled to a larger credit for "support." We do not agree. The parties agreed to the support payments during the pendency of the action, it is not clear what portion of the agreed-upon "support" payments ordered in April 2016 were attributed to child support, and Supreme Court's final child support order was not retroactive to the date the action was commenced (see Pfister v Pfister, 146 AD3d at 1138). Generally, absent certain circumstances not present here, there is a "strong public policy" against recoupment of support overpayments (Baraby v Baraby, 250 AD2d 201, 205 [1998]; see Johnson v Chapin, 12 NY3d 461, 466 [2009]; Xiaokang Xu v Xiaoling Shirley He, 77 AD3d 1083, 1085 [2010]; Rosenberg v Sack, 46 AD3d 1273, 1274 [2007], lv dismissed 10 NY3d 800 [2008]; Fox v Fox, 306 AD2d 583, 583 [2003], lv dismissed 1 NY3d 622 [2004]). However, a trial court has the authority to adjust an equitable distribution award where it is determined after trial that a temporary maintenance award was excessive (see Domestic Relations Law § 236 [B] [5] [d] [5], [13]; Johnson v Chapin, 12 NY3d at 466; Fox v Fox, 306 AD2d at 584). Under the facts and circumstances presented, we discern no abuse of discretion in Supreme Court's determination to, effectively, adjust the equitable distribution award to reflect an excessive temporary maintenance award (see Johnson v Chapin, 12 NY3d at 466).
Finally, the husband contends that Supreme Court should not have awarded the wife any amount that represented her share of the capital contributions to the marital businesses. Generally, "the valuation of a business for equitable distribution purposes is an exercise properly within Supreme Court's fact-finding power to be guided by expert testimony" (Pfister v Pfister, 146 AD3d at 1140 [internal quotation marks and citations omitted]), and an equitable distribution award "will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors" (Smith v Smith, 152 AD3d 847, 848 [2017] [internal quotation marks and citation omitted]; accord Cervoni v Cervoni, 141 AD3d 918, 920 [2016]). It is not disputed that marital funds were used to create both businesses and that both were marital property. Although it is apparent that there was some value to the businesses, in the absence of any expert evidence, the court properly declined to value and distribute a share of the marital businesses (see Iwahara v Iwahara, 226 AD2d 346, 348 [1996]; Niles v Niles, 126 AD2d 874, 875 [1987]). Under the circumstances presented, we discern no abuse of discretion in the court's award to the wife representing her contributions from marital assets to start the businesses (see Domestic Relations Law § 236 [B] [5] [d] [7]; [e]; compare Pulver v Pulver, 40 AD3d 1315, 1321 [2007]).
Clark, Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by increasing defendant's child support obligation to $773 per month, and, as so modified, affirmed.



Footnotes

Footnote 1: The third step is not relevant here because the parents' combined income did not exceed the statutory maximum.

Footnote 2: 15.3% is the self-employment Social Security and Medicare tax rate (see www.ssa.gov/pubs/EN-OS-10022.pdf).

Footnote 3: We are mindful that the wife did not challenge Supreme Court's child support award. The husband's challenge requires a recalculation, however, and this Court must award the presumptively correct amount of child support unless it is unjust or inappropriate (see Domestic Relations Law § 240 [1-b] [f]; Button v Button, 165 AD3d 1528, 1533 [2018]). Importantly, because child support is intended for the benefit of the child, not the wife, this is not a circumstance in which we are giving relief to a nonappealing party (cf. Hecht v City of New York, 60 NY2d 57, 60 [1983]).